IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-3241-WJM-KLM

CORDELL S. PEARCE,

 Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,
BMW FINANCIAL SERVICES, NA, LLC, and
EPM Z8, LLC d/b/a BMW OF LOVELAND,

 Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND**

---

Before the Court is Plaintiff Cordell S. Pearce's Motion for Remand ("Motion"), filed on January 1, 2023. (ECF No. 16.) On January 30, 2023, Defendants BMW of North America, LLC ("BMW Manufacturer"), BMW Financial Services, NA, LLC ("BMW Lender-Assignee"), and EPM Z8, LLC ("Loveland BMW") (collectively, "Defendants") filed their response (ECF No. 22). On February 13, 2023, Plaintiff filed his reply. (ECF No. 31.)

For the reasons set forth herein, the Motion is granted.

## I. BACKGROUND

**A. Allegations in Complaint**

On or about May 31, 2022, Plaintiff purchased from Loveland BMW a 2022 BMW X6 M, VIN 5YMCY0C01N9M63549 ("BMW X6 M") manufactured by BMW Manufacturer that was delivered to his home in Denver, Colorado. (ECF No. 4 ¶ 8.) The cash price of

the BMW X6 M was $124,020, plus $10,978.93 sales tax and a $599 "DOC FEE" for a total cash price of $135,597.93. (*Id.* ¶ 13.) A manufacturer rebate of $750 was deducted from the cash price, leaving a balance of $134,847.93. (*Id.* ¶ 15.) License, title, and registration fees of $37.20 were added, bringing the total financed amount to $134,885.13. (*Id.* ¶ 16.) The Retail Installment Sale Contract ("RISC") that Plaintiff signed provided for an APR of 2.99% and a finance charge of $10,682.67. (*Id.* ¶ 17.) The RISC was subsequently assigned to BMW Lender-Assignee. (*Id.* ¶ 10.) The BMW X6 M was delivered to Plaintiff's home in Denver on May 31, 2022. (*Id.* ¶ 18.)

Soon after delivery, Plaintiff noticed the BMW X6 M would lunge forward when coming to a stop during moderate weather. (*Id.* ¶ 19.) Plaintiff believed the issue to be caused by the "BMW Automatic Start/Stop Feature" which is supposed to shut off the engine as the driver depresses the brake pedal. (*Id.* ¶ 20.) The BMW X6 M would lunge forward as the RPMs dropped to zero, creating a dangerous situation for vehicles, pedestrians, objects, and obstacles in front of the vehicle when slowing to a stop. (*Id.* ¶ 21.)

On June 6, 2022, Plaintiff told Matt Sandine of Loveland BMW about the dangerous condition created by the BMW X6 M lunging forward when coming to a stop. (*Id.* ¶ 22.) On or about June 7, 2022, Loveland BMW picked up the BMW X6 M to investigate and repair the issue with the vehicle lunging forward, as well as to address some cosmetic issues. (*Id.* ¶ 23.) The BMW X6 M was returned to Plaintiff in Denver on June 20, 2022, after approximately 14 days in the shop on this first repair attempt. (*Id.* ¶ 24.)

On June 29, 2020 Plaintiff again called Loveland BMW to report the problem with

the BMW X6 M lurching forward had not been repaired.  (*Id.* ¶ 26.)  On July 18, 2022, Sandine told Plaintiff to call "BMW Corporate" about the issue.  This was allegedly a misrepresentation and breach of warranty because under the terms of the express warranty, Loveland BMW was designated as the point of contact for warranty claims.  (*Id.* ¶ 29.)

On August 23, 2022, Dewey Gatts of BMW Manufacturer told Plaintiff that BMW would not cancel the RISC and repurchase the BMW X6 M.  (*Id.* ¶ 36.)  On August 23, 2022, Sandine offered to purchase the BMW X6 M from Mr. Pearce for $108,000.  (*Id.* ¶ 37.)  On August 31, 2022, BMW Manufacturer and Loveland BMW returned the BMW X6 M to Plaintiff after 35 days in the shop.  (*Id.* ¶ 38.)  In total, the BMW X6 M spent approximately 49 days in the shop for the lurching issue.  (*Id.* ¶ 39.)  Upon receiving the car back, Plaintiff tested it in moderate weather and found the lurching issue was still present.  (*Id.* ¶ 40.)

**B.     Instant Lawsuit**

On November 14, 2022, Plaintiff filed a Complaint and Jury Demand against Defendants in Denver District Court.  (ECF No. 4.)  Plaintiff asserted three claims against Defendants in his Complaint: (1) Colorado Lemon Law, C.R.S. § 42-10-101 *et seq.*, (2) Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and (3) recission.  (*Id.*)

With the Complaint, Plaintiff filed the required state Civil Cover Sheet in which he sought a monetary judgment for more than $100,000.  (ECF No. 1-3.) Plaintiff stated:

> This party is seeking a monetary judgment against another
> party for more than $100,000.00, including any penalties or
> punitive damages, but excluding attorney fees, interest and
> costs, as supported by the following certification . . . .

3

(*Id.*)

On December 16, 2022, Defendants removed this case pursuant to this Court's federal question jurisdiction, 28 U.S.C. § 1331.  (ECF No. 1 ¶ 4.)  Notably, Defendants did not assert any other basis for this Court to exercise subject matter jurisdiction; Plaintiff and Loveland BMW are Colorado citizens, which would destroy diversity jurisdiction.  (*See generally id.*; ECF No. 4 at 1–2.)  Additionally, Plaintiff brings no other federal claims, and therefore, the Court cannot assert supplemental jurisdiction over the MMWA claim.  Accordingly, the only way this case can remain in federal court is if the amount in controversy for MMWA claims is met.

To support their assertion that this Court has jurisdiction, Defendants state in the Notice of Removal:

> 6. Plaintiff's Magnuson-Moss Act claim invokes federal question jurisdiction.  For there to be federal-question jurisdiction over claims brought by a consumer under the Magnuson-Moss Act, the amount in controversy must be at least $50,000.  15 U.S.C. § 2310(d)(1)(B).
>
> 7. In this case, Plaintiff alleges that the total purchase of the BMW X6 M he purchased from Defendants was $135,597.93.  (Compl. ¶ 13.)  Additionally, Plaintiff's prayer for relief requests punitive damages, costs, and attorneys' fees.  His civil cover sheet also expressly states that he is seeking a principal monetary judgment for more than $100,000.  Therefore, the threshold of $50,000 for jurisdiction is met.
>
> 8. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, and this action is properly removable pursuant to 28 U.S.C. § 1441.

(ECF No. 1 ¶¶ 6–8.)

4

## II. LEGAL STANDARDS

### A.   Removal

Removal statutes are construed strictly, and any doubts about the correctness of removal are resolved in favor of remand.  *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  Evidence establishing the jurisdictional amount is required only when the plaintiff contests, or the court questions, the defendant's allegation.  *Id.*  When a defendant's assertion of the amount in controversy is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied."  *Id.* at 82 (citing 28 U.S.C. § 1446(c)(2)(B)).

### B.   The Magnuson-Moss Warranty Act

The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to bring a "suit for damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  Subject matter jurisdiction for cases involving the MMWA requires an amount in controversy of $50,000, exclusive of interest and costs.[1]  15 U.S.C. § 2310(d)(3)(B).  The party

---

[1] In full, § 2310(d)(3) provides:

> No claim shall be cognizable in suit brought [in federal district court] under [the Warranty Act]—
>
> (A) if the amount in controversy of any individual claim is less than the sum or value of $25.00;
>
> (B) if the amount in controversy is less than the sum or value of $50,000

5

invoking federal jurisdiction bears the burden of showing that the amount in controversy requirement for federal jurisdiction under the MMWA is met.  *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

### III. ANALYSIS

In the Motion, Plaintiff requests that the case be remanded to Denver District Court, arguing that Defendants fail to sufficiently allege in the Notice of Removal that federal question jurisdiction exists; specifically, Plaintiff contends that the amount in controversy in connection with the MMWA is not $50,000.  (ECF No. 16 at 4.)  Plaintiff argues that to establish the amount in controversy for this Court to exercise jurisdiction under the MMWA, Defendants must at least establish the difference in value between the defective BMW and a replacement.  (*Id.*)  The Notice of Removal does not contain such specific information.

Additionally, Plaintiff contends that Defendants' citation to the $100,000 amount in controversy statement on the Civil Cover Sheet is inadequate because it includes punitive damages, attorneys' fees, and costs, which are not items of damages for a breach of warranty claim and cannot be included in determining the amount in controversy under the MMWA.  (*Id.* at 5.)

Finally, Plaintiff argues that at the time of removal, Defendants had in their possession a settlement demand wherein Plaintiff set forth his calculation of damages

---

      (exclusive of interests and costs) computed on the basis of all claims to be determined in the suit; or

          (C) if the action is brought as a class action, and the number of named plaintiffs is less than 100.

15 U.S.C. § 2310(d)(3).

6

excluding punitive damages as $31,507.50 including fees and costs (or $28,312.70 excluding fees and costs.).  (*Id.* at 5, 6; ECF No. 16-1.)

Defendants oppose remand, arguing that the Civil Cover Sheet or various calculations, discussed below, support a $50,000 amount in controversy.  (ECF No. 22.) Because Defendants have the burden of proving the amount in controversy is satisfied by a preponderance of the evidence, the Court analyzes the various methods by which Defendants argue that the amount in controversy is met.

**A.     Civil Cover Sheet**

Plaintiff's Civil Cover Sheet, filed in Denver District Court, states:

> This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:
>
> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

(ECF No. 1-3.)  Plaintiff's statement of the amount in controversy does not distinguish between the value of Plaintiff's state and MMWA claims.

Defendants' reliance on the amount in controversy in the Civil Cover Sheet requires the Court to address whether it must take into account Plaintiff's state claims when computing the amount in controversy.  The plain meaning of subpart (B) of § 2310(d)(3) *appears* unambiguous.  It instructs the Court to compute the amount in controversy "on the basis of *all claims* to be determined in the suit."  15 U.S.C. § 2310(d)(3)(B) (emphasis added).  On its face, the term "all claims" appears to encompass both state and federal claims.  However, the Tenth Circuit has addressed

7

this issue in a footnote in an unpublished opinion, stating that "[c]laims for attorneys fees and amounts claimed under state law are not included in the amount-in-controversy calculation for purposes of the MMWA."  *Okla. Farm Bur. Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775, 778 (10th Cir. 2005), (citing *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069, 1071 (5th Cir. 1984), *abrogated on other grounds by Dart Cherokee Basin*, 574 U.S. 81); *see also Ansari v. Bella Auto. Grp., Inc.*, 145 F.3d 1270, 1272 (11th Cir. 1998) (same); *Critney v. Nat'l City Ford, Inc.*, 255 F. Supp. 2d 1146, 1147 (S.D. Cal. 2003) (analyzing why including state claims in MMWA amount in controversy calculation is inconsistent with purpose of $50,000 threshold to avoid trivial actions in federal court).

Given the Tenth Circuit's statement and the clear weight of authority, the Court will not take Plaintiff's state claims into account when calculating the amount in controversy under the MMWA.  Because the amount listed in the Civil Cover Sheet does not identify the amount specific to the MMWA claim and the parties provide no detailed calculation for the Court to consider, the Court rejects the Civil Cover Sheet as sufficient evidence of the amount in controversy.

**B.     Settlement Offer**

Plaintiff argues that his settlement offer, which was under $50,000, is evidence of the amount in controversy not meeting the jurisdictional threshold.  In the offer e-mail, Plaintiff requests that Defendants "pay off [the] balance of the loan" and also pay other amounts totaling $31,507.70.  (ECF No. 16-1.)  The e-mail does not state what the balance of the loan is, though Defendants' response states that the current loan payoff amount is $122,810.70.  (ECF No. 22 at 6.)  However, Defendants argue that "Plaintiff's characterization of his settlement offer also does not accurately reflect the amount in

controversy" and that "Plaintiff fails to understand how a repurchase works." (ECF No. 22 at 6.)

Defendants do not explain how the settlement offer demonstrates that the amount in controversy exceeds $50,000. However, despite Plaintiff's arguments, it is unclear whether the value of the loan payoff amount is part of the MMWA claim or the state claims. Because Defendants have failed to articulate how the settlement offer—to the extent they believe it is evidence of the amount in controversy at all[2]—satisfies the MMWA amount in controversy requirement, the Court also rejects it as insufficient evidence of the amount in controversy.

## C.    Calculating the Amount in Controversy

As Defendants point out, the Tenth Circuit has not specifically addressed meeting the jurisdictional threshold under the MMWA. (ECF No. 22 at 7.) The Third, Sixth, and Seventh Circuits follow the same method of calculating the amount in controversy under § 2301(d)(1)(B). *See Golden v. Gorno Bros.*, 410 F.3d 879, 885 (6th Cir. 2005) (following Third and Seventh Circuits); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004); *Gardynski–Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir.1998). To calculate the amount in controversy under § 2301(d)(1)(B), the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and

---

[2] Defendants point out that the case Plaintiff cites for the proposition that a settlement offer may be considered when determining an amount in controversy does not in fact support this proposition. (ECF No. 22 at 6.) The Court agrees with Defendants; however, the Court located a Northern District of Florida case in which the court considered a settlement demand directly in connection with whether the amount in controversy for a MMWA claim was satisfied. *Matthews v. James Hardie Bldg. Prod., Inc.*, 2017 WL 6994567, at *3 (N.D. Fla. Nov. 21, 2017). Nevertheless, the Court finds the settlement offer is insufficient evidence of the MMWA amount in controversy.

9

the value that the plaintiff received from the allegedly defective vehicle.  *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521 (7th Cir. 2003) (citing *Gardynski–Leschuck*, 142 F.3d at 959).

Here, Defendants state that "[a]s Defendants are not in possession of the Vehicle, and do not know the Vehicle's current condition or mileage, [they are] unable to estimate the Vehicle's value, though Defendants estimate that Plaintiff's Vehicle being resold with a lemon law buyback disclosure would suffer a significant loss in value." (ECF No. 22 at 7.)  Although Defendants make sweeping statements that this case "easily meets the jurisdictional requirement" and that "[r]eplacement and a refund of the purchase prices less depreciation based on actual use easily surpasses the $50,000 threshold given the total purchase price," they never provide the Court with concrete numbers to plug into the formula to confirm Defendants' statements.  (ECF No. 22 at 5, 6.)  The Seventh Circuit said it best: "Unfortunately, no party has provided us with the relevant numbers to plug into the *Gardynski–Leschuck* formula, and we are thus in no position to conclude that jurisdiction under § 2301(d)(1)(B) existed over the Magnuson–Moss claim[]."  *Voelker*, 353 F.3d at 521–22.

The same is true here.  While it may very well be that the MMWA claim is worth more than $50,000, the Court "cannot possibly determine whether the amount in controversy has been met without knowing the value of the car with the alleged defects."  *Diamond v. Porsche Cars N. Am., Inc.*, 70 F. App'x 893, 895 (7th Cir. 2003).  Because the Court has already concluded that neither diversity nor supplemental jurisdiction apply in this case, and the amount in controversy has not been satisfied with respect to Plaintiff's MMWA claim, the Court finds that it lacks jurisdiction in this case.

## IV. ATTORNEYS' FEES AND COSTS

Plaintiff requests his attorneys' fees and costs incurred as a result of removal. (ECF No. 31 at 5.) However, the Court finds that the removal was not improper *ab initio*, and therefore, declines to award attorneys' fees and costs. *See Suder v. Blue Circle*, 116 F.3d 1351, 1352 (10th Cir. 1997).

## V. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. Plaintiff Cordell S. Pearce's Motion for Remand (ECF No. 16) is GRANTED;

2. This case is REMANDED to Denver District Court;

3. The Clerk shall transfer this file to Denver District Court; and

4. The Clerk shall terminate this action.


Dated this 14th day of April, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge